**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

REGINA COLLINS,                            Case No. 1:25-cv-458

       Plaintiff,                               Dlott, J.
                                                     Bowman, M.J.

   v.

OHIO HOUSE OF REPRESENTATIVES,

       Defendants.

**REPORT AND RECOMMENDATION**

By separate Order issued this date, Plaintiff Regina Collins has been granted leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. The complaint is now before the Court for a *sua sponte* review to determine whether the complaint, or any portion of it, should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B). For the reasons that follow, the undersigned recommends that the complaint be dismissed.

**I. General Screening Authority**

Congress has authorized federal courts to dismiss an *in forma pauperis* complaint if satisfied that the action is frivolous or malicious. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *see also* 28 U.S.C. § 1915(e)(2)(B)(i). A complaint may be dismissed as frivolous when the plaintiff cannot make any claim with a rational or arguable basis in fact or law. *Neitzke v. Williams*, 490 U.S. 319, 328-29 (1989); *see also Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990). An action has no arguable legal basis when the

defendant is immune from suit or when plaintiff claims a violation of a legal interest which clearly does not exist. *Neitzke*, 490 U.S. at 327. An action has no arguable factual basis when the allegations are delusional or rise to the level of the irrational or "wholly incredible." *Denton,* 504 U.S. at 32; *Lawler,* 898 F.2d at 1199. The Court need not accept as true factual allegations that are "fantastic or delusional" in reviewing a complaint for frivolousness. *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010) (quoting *Neitzke*, 490 U.S. at 328).

Congress has also authorized the *sua sponte* dismissal of complaints which fail to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915 (e)(2)(B)(ii). Although a plaintiff's *pro se* complaint must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers," the complaint must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (*per curiam*) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and quotation omitted)). The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010)("dismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim" under §§ 1915(e)(2)(B)(ii) and 1915A(b)(1)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Court must accept

all well-pleaded factual allegations as true, but need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Although a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557.

## II. Plaintiff's Complaint

On July 3, 2025, Plaintiff tendered a 39-page pro se complaint that combines a standard complaint form with a variety of exhibits. Before reviewing Plaintiff's claims, the undersigned notes that Plaintiff is a pro se litigant who is not authorized to practice law[1], and therefore cannot represent anyone's interests but her own.

In her complaint, Plaintiff identifies the following eleven Defendants: (1) Jessica Miranda, former Ohio State Representative and Hamilton County Auditor; (2) Gwen McFarlin, former Chair of Hamilton County Board of Elections; (3) Hamilton County Board of Elections; (4) Hamilton County Democratic Party; (5) Alex Linser, Hamilton County Board of Elections Director; (6) Karen Brownlee, State Representative; (7) Jodi Whitted, Former Interim State Representative Ohio House District 28; (8) State of Ohio Democratic Party; (9) Hamilton County Democratic Party; (10) Ohio Democratic Party; and (11) Ohio

---

[1] Plaintiff is a former attorney who was suspended from the practice of law in February 2009 by the Supreme Court of Ohio. See https://www.supremecourt.ohio.gov/attorneysearch/#/67938/attyinfo (accessed on July 9, 2025). Ms. Collins was similarly suspended by this Court. *See In re Regina A. Collins*, No. 1-09-mc-32-SJD on September 17, 2009, and was found in contempt on December 11, 2009 in part for failing to surrender her certificate of admission.

3

House of Representatives. In the caption of the complaint, Plaintiff also lists John and Jane Doe and John and Jane Doe Organizations. (Doc. 1-1, PageID 37.)

As one of several exhibits interspersed within the pages of her complaint, Plaintiff has included a "Determination and Notice of Rights" issued to Plaintiff on March 18, 2025 from the U.S. Equal Employment Opportunity Commission ("EEOC"). The Notice advises Plaintiff that she must file suit within 90 days of her receipt of the Notice. (Doc. 1-1, PageID 40-41.) Plaintiff also has attached a copy of an EEOC Charge of Discrimination, originally filed with the EEOC on February 12, 2025. In that Charge, Plaintiff alleges that the Ohio Legislature Democratic Caucus discriminated against her based on Plaintiff's Race, Color, Religion, Sex, and Genetic Information. She further alleges that the Ohio Democratic Party

> received 44 [million] dollars from pro abortion entities to turn Ohio into a pro abortion state, while running for state rep OH HD 28 as a Black Catholic female I was threatened with loss of life by my primary opponent, then State Rep. HD 28 Incumbent Jessica Miranda, and Ham. Cty. Chair Gwen McFarland [sic] if I did not get out of the race then I was not appointed interim state rep when Jessica Miranda vacated her seat early.

(Doc. 1-1, PageID 42.)

In the same Charge, Plaintiff alleges that she experienced the following discriminatory "adverse action":

> On May 5, 2024, I was denied employment as Interim Replacement for Jessica Miranda, State Representative for House District 28, by the Ohio Democratic Legislative Caucus and the Hamilton County Democratic Party…. Under the rules of Replacement for Vacated Legislative Seats the Primary Party Candidate who has most recently challenged the Vacated Member for the Seat becomes the Replacement. I am the only person who has ever challenged Jessica Miranda for her Seat. I was discriminated against because I am a Pro-Life, Practicing Catholic, African American, Politically Astute, Democrat Woman.

(Doc. 1-1, PageID 44.)

4

Plaintiff repeats the same allegations in the instant federal complaint. She refers to the following list of laws or legal theories to support her claims: "Voting Rights Suppression, Voting and Election Interference, Stalking, Intentional Infliction of Emotional Distress, Discrimination Based on Religion, Menacing, Telephone Harassment in violation of Ohio Revised Code and the United States Code." (Doc. 1-1, PageID 46.)

By way of factual support, Plaintiff alleges that in late June of 2022, she received three telephone calls from Defendants Miranda, McFarlin and Linser relating to the primary election for the District 28 Representative seat. Plaintiff alleges that she received the first two phone calls on or about June 27, 2022 from then-representative Jessica Miranda and from Hamilton County Board of Elections Chairwoman Gwen McFarlin. Both Defendants instructed her to withdraw her petition to run against Jessica Miranda in the primary election, and repeatedly threatened that if she did not withdraw her petition to run, then something "VERY, VERY, VERY, VERY BAD WAS GOING TO HAPPEN TO ME!" (Doc. 1-1, PageID 46-47.) A few days later, Plaintiff alleges that Defendant Alex Linser called to tell her that her 2022 Primary Petition Signatures had been found to be invalid. (Doc. 1-1, PageID 47.)

The following Tuesday, July 6, 2022, Plaintiff alleges that Defendant Linser and his administrative assistant, Karen McDaniel, provided Plaintiff with the "wrong Instruction page for the independent Candidate Signature Petitions." According to Plaintiff, McDaniel assisted Plaintiff in filling out the forms and incorrectly told her to leave the Nominating Section blank since she was not nominated by the Democratic Party.[2] As a result, Plaintiff's petition was later disqualified. (Doc. 1-1, PageID 48.)

---

[2]McDaniel is not a named defendant. Plaintiff alleges that Administrative Assistant McDaniel read the "Ohio Candidate Requirement Guide" including the section that appeared to pertain to the "Nominating Section,"

In addition to the above allegations, Plaintiff has included a number of documents that the undersigned frankly struggles to connect to Plaintiff's complaint. The additional exhibits include several health care records relating to high blood pressure, a dental issue, and stress, (PageID 60-63), and Woodlawn Police Department Daily Log Reports dated June 3, 2023, June 9, 2023, July 9, 2023, August 8, 2023, August 9, 2023, October 22, 2023, February 7, 2024, March 13, 2024, July 18, 2024, and July 25, 2024.(PageID 64-73.) Plaintiff has also included a copy of an ADT bill. (PageID 74-75.) The referenced police logs relate to reports made from a residence located at 157 Grove Road in Cincinnati, Ohio, many of which appear to have been generated by an individual named Maurice Williams, whose name and address also appears on the ADT bill.

In the relief section of her complaint, Plaintiff seeks "monetary and punitive damages," a criminal prosecution to "punish [the Defendants] as the Court sees fit," the Defendants' removal from their positions, and a "formal apology." (*Id.*, PageID 50.)

**III. Analysis**

The undersigned recommends dismissal of this case for failure to state any plausible federal claim, because Plaintiff does not include sufficient factual allegations to state any claim under any of the laws or legal theories to which she refers. Generally, Plaintiff's list of legal theories does not distinguish between state and federal law, and does not identify any specific statutes. Because the undersigned concludes that Plaintiff's allegations are insufficient to state any federal claim as a matter of law, this Court should

---

and read aloud the bolded sentence: "This petition shall be circulated by a member of the same political party stated above by the candidate." Plaintiff alleges that McDaniel then stated: "Since you are not being nominated by a party, don't fill in this nominating section. Just get your signatures[.]" (Doc. 1-1, PageID 56.)

decline to exercise supplemental jurisdiction over any claims that would arise, if at all, solely under state law.

Federal courts are courts of limited jurisdiction. In the case presented, Plaintiff generally alleges that federal subject matter jurisdiction exists under 28 U.S.C. § 1343(3) and 28 U.S.C. § 1331 based on alleged violations of her civil rights. *See generally* 42 U.S.C. § 1983. (Doc. 1-1, PageID 38).To the extent that Plaintiff is asserting some type of federal civil rights claim under 42 U.S.C. § 1983, such a claim requires her to establish (1) that she was deprived of a right secured by the Constitution or the laws of the United States, and (2) that the deprivation was caused by a person acting under color of state law. *Moore v. City of Paducah,* 890 F.2d 831, 833-34 (6th Cir.1989).

The list of legal theories that Plaintiff includes in her complaint refers to "Discrimination Based on Religion" but does not refer specifically to Title VII of the federal Civil Rights Act. But by virtue of the inclusion of her EEOC Charge and a copy of her Notice of her Right to Sue, the undersigned reasonably infers that Plaintiff alleges some type of federal employment discrimination. Assuming that Plaintiff is alleging discrimination based on her protected class, her claim fails because it is entirely conclusory.[3] Even if an application to be selected as a nominee by a major political party could be considered to be an application for "employment," Plaintiff's assertion of her racial and religious identity, *standing alone*, is insufficient to give rise to a plausible discrimination claim.

---

[3]Given the dates of the events that are alleged to have taken place in 2022 as well as the date of the Notice of the Right to Sue, it appears the claim may be time-barred. The undersigned finds no need to resolve that issue, however, because the claim is clearly barred for other reasons.

In *Keys v. Humana, Inc.*, 684 F.3d 605 (6th Cir. 2012), the Sixth Circuit clarified that even though the Supreme Court in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) established that a complaint alleging employment discrimination need not establish all elements of proof under *McDonnell Douglas*, such a complaint still must satisfy the "plausibility" standard set forth in *Iqbal* and *Twombly*. *See id.* at 610 (6th Cir. 2012) (holding that an employment discrimination complaint must allege "sufficient 'factual content' from which a court can 'draw the reasonable inference' that the employer 'discriminate[d] against [Keys] with respect to [her] compensation, terms, conditions, or privileges of employment, because of [her] race, color, religion, sex, or national origin.' ") (additional citation omitted). Reviewing the complaint at issue, the *Keys* court held that it contained sufficient factual allegations that were "neither speculative nor conclusory." *Id.* ! In holding that the complaint met the plausibility standard, the Sixth Circuit focused on the complaint's inclusion of allegations about "several specific events in each of those employment-action categories where Keys alleges she was treated differently than her Caucasian management counterparts; it identifies the key supervisors and other relevant persons by race and either name or company title; and it alleges that Keys and other African Americans received specific adverse employment actions notwithstanding satisfactory employment performances." *Id.*

In contrast to the factual allegations included in the complaints in *Swierkiewicz* and *Keys*, Plaintiff's complaint here contains only conclusory statements unsupported by any facts that would provide "fair notice" to any Defendant of the nature of Plaintiff's claims. For example, Plaintiff includes no specific factual allegations against any Defendant that suggest discriminatory animus. In the absence of such critical factual support, Plaintiff's

8

conclusory leaps and inferences defy plausibility. At a minimum, Plaintiff must allege some facts that give rise to an inference of discrimination based on her protected class. Here, however, Plaintiff's brief references to her race and religion are entirely conclusory.

Returning to Plaintiff's list of legal theories, the undersigned next considers her references to "Voting Rights Suppression" and "Voting and Election Interference." The undersigned infers that Plaintiff seeks to hold Defendants accountable for their refusal to appoint her as the interim replacement for the unexpired term of Representative Miranda in 2024 and/or for their failure to place her on the ballot either in the 2022 primary or in the general election. That said, Plaintiff does not identify any particular federal law or constitutional provision, nor does she explain in what way her rights were violated, other than through a brief reference (without citation) to some type of "rules of replacement" that she alleges that the Hamilton County Democratic Party failed to follow in 2024. Such allegations are too cursory for the undersigned to discern any plausible federal claim. "[T]he fundamental right to vote is not implicated by laws providing for temporary appointments to fill vacancies." *State ex rel. Dawson v. Cuyahoga Cty. Bd. of Elections*, 18 N.E.3d 1204, 1206, 140 Ohio St.3d 406, 407 (2014). Although a would-be candidate may assert a constitutional right to ballot access under the First Amendment, typically such a claim would be filed against the Secretary of State, not party officials, a political opponent, or the entire "Ohio House of Representatives." In short, Plaintiff's conclusory allegations fail as a matter of law to state a federal claim against any of the named Defendants.

In *Noble v. Husted*, No. 1:13-cv-666-SAS-SKB, 2013 WL 5819664, at *5–6 (S.D. Ohio Oct. 29, 2013), this Court dismissed similar claims made by a pro se plaintiff who

9

objected to the failure of county officials to include her name on Cincinnati's mayoral ballot. In that case, the undersigned reasoned that "federal courts are generally not the appropriate forum for handling 'the minutia of state election disputes.'" *Id.*, at *5 (quoting *Bert v. New York City Bd. of Elections,* No. CV-06-4789 (CPS), 2006 WL 2583741, at *3 (E.D.N.Y. Sept.7, 2006)); *see also Rivera–Powell v. New York City Bd. of Elections,* 470 F.3d 458, 469 & n. 16 (2nd Cir.2006) (Sotomayor, J ., pointing out that the Second Circuit shared the position of "many other circuits" in holding that "federal court intervention in garden variety election disputes is inappropriate.") (internal quotation marks and multiple citations omitted). Because the plaintiff in *Noble* had made only "conclusory assertions" of election fraud, and "[i]n the absence of factual allegations suggesting that plaintiff's omission from the mayoral primary election ballot involved 'extraordinary circumstances' rising to the level of a federal constitutional deprivation," the plaintiff had failed to state a viable claim for relief. *Id.*, 2013 WL 5819664, at *6.

Like the plaintiff in *Noble*, Plaintiff here has failed to allege plausible facts that indicate anything more than a "garden variety" election dispute. Plaintiff's allegation that a nonparty administrative assistant to Deputy Director Linser sat alongside Plaintiff as she completed her petition and incorrectly interpreted written instructions that led Plaintiff to leave a portion of her application blank, resulting in later disqualification, does not alter that conclusion. Plaintiff does not accuse either the administrative assistant or Defendant Linser himself of intentional deceit. She alleges only that Linser asked his assistant "if Petitioner Collins had received the correct documents," to which McDaniel responded, "Yes, I gave them to her." (Doc. 1-1, PageID 56.) Plaintiff further alleges that if a separate "Non-Party Nominated Petitioner Instruction Sheets exist," she was not provided with

10

those instructions. (*Id.*) However, any error relating to the incorrect interpretation by the assistant or failure to provide the correct instruction sheet appears to have been the result of mere negligence or incompetence. *See also McCoy v. Platten*, No. 1:10-cv-411, 2010 WL 1609260, at *1 (N.D. Ohio Apr. 20, 2010) (dismissing claim by would-be candidate that house district maps were not up to date, causing her to circulate petitions for the wrong district, because plaintiff's allegations suggested mere negligence or incompetence and did not allege intentional or purposeful deceit by any defendant).

In the absence of any other factual details included in the complaint, the remainder of Plaintiff's claims are presumed to relate to the 2022 telephone calls that she alleges that she received. With respect to Plaintiff's reference to "stalking," the undersigned finds the analysis of *Tsibouris v. Colerain Township*, No.1:22-cv-458, 2022 WL 3716028, at *4 (S.D. Ohio Aug. 29, 2022) to be highly persuasive.

> "The federal statute regarding stalking is 18 U.S.C. § 2261A, and it does not contain a private right of action." *Murray v. Williams*, No. 3:15-cv-284, 2016 WL 1122050, at *10 (E.D. Tenn. Mar. 22, 2016) (citing 18 U.S.C. § 2261A; *Hopson v. Commonwealth Attorney's Office*, No. 3:12-cv-744, 2013 WL 1411234, at *3 (W.D. Ky. April 8, 2013) (citation omitted) (concluding there is no private cause of action under 18 U.S.C. § 2261A)). To the extent plaintiff is attempting to bring a state law claim against the defendants for stalking, the complaint fails to state a claim for relief. Although Ohio law provides for civil actions for damages based on a criminal act, *see* Ohio Rev. Code § 2307.60, plaintiff's conclusory allegations of stalking fail to plausibly allege an actionable claim for relief.

*Id.*, 2022 WL 3716028, at *4, report and recommendation adopted at 2023 WL 6370422 (S.D. Ohio, Sept. 30, 2023). The same reasoning applies to Plaintiff's claim of "menacing" in this case. There is no federal right of action for stalking or menacing, and Plaintiff's conclusory references fail to plausibly allege any claim under Ohio law against any Defendant.

11

That leaves Plaintiff's references to the Intentional Infliction of Emotional Distress, and "Telephone Harassment in violation of Ohio Revised Code and the United States Code." Once again, there is no federal claim for intentional infliction of emotional distress. So if such a claim exists, it arises solely under state law. And Plaintiff's allegations are woefully insufficient to state any type of claim for "telephone harassment," even if the undersigned could conceive of the existence of any federal claim for which a private right of action exists.

Like the "stalking" and "menacing" claims, the intentional infliction of emotional distress claim and the telephone "harassment" claims are presumed to relate to the telephone calls that Plaintiff alleges that she received from Miranda, McFarlin and Linser in 2022.[4] Plaintiff speculates that the Hamilton County Democratic Party and the Ohio Democratic Party were motivated to keep Plaintiff, who identifies as a "Pro-Life, Practicing Catholic, African American, Politically Astute Democrat Woman" off the ballot in the general election because of Issue 1, which Plaintiff identifies as "the Ohio Abortion Rights Bill."[5] Plaintiff alleges that the Hamilton County Democratic Party and The Ohio Democratic Party had "received a whole lot of money (44 million dollars)" relating to the abortion issue. (Doc. 1-1, PageID 48.) Plaintiff asserts that the Defendants gave the 44 million dollars to the Defendant candidates and/or officials "who stopped Regina Collins from getting on the ballot…." (*Id*., PageID 52.) She further alleges that Defendant Whitted acted "in concert" and "knowingly benefit[ted]" from the phone calls made to Plaintiff by

---

[4]Plaintiff alleges that the first two calls were made on June 27, 2022, while the third call by Defendant Linser occurred a "few days later." Plaintiff did not seek to initiate this lawsuit until July 3, 2025. Therefore, any federal claims based on the alleged telephone calls also would appear to be barred by the two-year statute of limitations that applies to § 1983 claims filed in Ohio. *See*, *generally*, *Browning v. Pendleton*, 869 F.2d 989, 992 (6th Cir. 1989); *Lovelace v. O'Hara*, 985 F.2d 847, 852 (6th Cir. 1993).
[5]Ohio Issue 1, passed in November 2023, is a state constitutional amendment that enshrined the "right to make and carry out one's own reproductive decisions…." up to the point of "fetal viability."

12

Miranda, McFarlin and Linser, because Whitted ultimately was selected for the Interim State Representative position. Plaintiff includes similar allegations against Defendant Brownlee, who ran for the State Representative position in the general election. And Plaintiff alleges that Defendant Miranda benefitted from the alleged calls by McFarlin and Linser with whom she acted "in concert," because Miranda was endorsed to permanently remain in the position of Hamilton County Auditor. (*Id.*)

Consistent with the remainder of her complaint, Plaintiff's conclusory and implausible accusations do not withstand analysis under the minimal pleading standards established by *Iqbal* and *Twombly.* For the reasons stated, Plaintiff fails to state any viable claim under federal law.

### IV.  Conclusion and Recommendations

Accordingly, **IT IS RECOMMENDED THAT:**

1. All federal claims should be **DISMISSED with prejudice** for failure to state a claim on which relief may be granted under 28 U.S.C. § 1915(e)(2);

2. The Court should decline to exercise supplemental jurisdiction over any plausible state law claims. The undersigned has not detected any plausible claims but out of an abundance of caution, any possible state law claims should be dismissed without prejudice;

3. The Court should certify pursuant to 28 U.S.C. § 1915(a) that for the foregoing reasons an appeal of any Order adopting this Report and Recommendation would not be taken in good faith and therefore should deny Plaintiff leave to appeal *in forma pauperis*.

                                  *s/Stephanie K. Bowman*
                                  Stephanie K. Bowman
                                  United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| REGINA COLLINS, | Case No. 1:25-cv-458 |
| Plaintiff, | Dlott, J. |
| | Bowman, M.J. |
| v. | |
| OHIO HOUSE OF REPRESENTATIVES, | |
| Defendants. | |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).